**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DAVID LUIS TORRES,

       Plaintiff,

      v.                                Civ. No. 20-440 SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,[1]

       Defendant.

**MEMORANDUM OPINION AND ORDER**[2]

      Claimant David Luis Torres argues that the Administrative Law Judge ("ALJ") who

denied his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§

401-434, committed several instances of error. Mr. Torres argues that the ALJ erred in

evaluating the medical opinions pertaining to his mental impairments. In this case, all relevant

medical opinion evidence points to a conclusion different than the one the ALJ reached, and the

ALJ relied on a lack of non-medical opinion evidence to discount that medical opinion evidence.

The Court agrees that, once a severe mental impairment has been established, lack of non-

medical opinion evidence does not constitute substantial evidence to disregard all the medical

opinions in the file. Further, the Court cannot agree with the Commissioner's harmless error

---

[1] Kilolo Kijakazi was appointed the acting Commissioner of the Social Security Administration
on July 9, 2021, and is automatically substituted as a party pursuant to Federal Rule of Civil
Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all
proceedings and to enter an order of judgment. Docs. 3, 5, 6. The Court has jurisdiction to review
the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

argument because the ALJ did not set forth any affirmative record evidence supporting the RFC pertaining to social interaction limitations. As a result, the Court GRANTS Mr. Torres's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum, Doc. 19, and remands this matter for further consideration consistent with this Opinion.[3]

## APPLICABLE LAW

A.    Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

---

[3] The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

[4] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

(3)     At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)     If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.     Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless

(1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the

proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365

F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004);

*Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d

1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of

'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek

v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more

than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It

means—and means only—such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in

the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere

conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision

must "provide this court with a sufficient basis to determine that appropriate legal principles

have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal

quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of

evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a

minimal level of articulation of the ALJ's assessment of the evidence is required in cases in

which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79

F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing

court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that

4

correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Mr. Torres argues that the Court should remand because of errors pertaining to the ALJ's evaluation of the following portions of two medical opinions: (1) an opinion by examining consultant Dr. Amy DeBernardi that Mr. Torres's severe anxiety "would be very likely to impact his abilities to be a dependable employee"; and (2) an opinion by state agency non-examining reviewer Dr. Gary Lindsay that Mr. Torres should work in a setting where he is "mostly alone." The ALJ rejected all medical opinions in the file pertaining to Mr. Torres' social functioning limitations. In doing so, the ALJ relied on a *lack* of non-medical opinion evidence. The absence of non-medical opinion evidence is not substantial evidence that can support an RFC determination that contradicts all medical opinion in the record. The Court remands for the ALJ to specify the affirmative record evidence in support of the RFC for social interactions, or to further develop the record if the ALJ finds the current record is insufficient.

A.   Standard of review

As the Commissioner notes, Mr. Torres filed his disability insurance benefits application under Title II on June 30, 2017. AR 15. Therefore, the significantly revised regulations pertaining to medical opinion evidence apply to this case. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. The Administration will no longer evaluate whether treating physician opinions are entitled to "controlling weight," or give

"good reasons" for the weight given a treating source opinion. *Compare* 20 C.F.R.

§ 404.1527(c)(2) (2016) & 20 C.F.R. § 404.1527(c)(2) (2017), *with* 20 C.F.R. § 404.1520c(b).

The Administration will no longer "defer or give any specific evidentiary weight" to any medical

opinion. 20 C.F.R. § 404.1520c(a).[5]

The new regulation sets forth five factors according to which every medical opinion is

evaluated:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

> (3) Relationship with the claimant. This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.

>> (i) Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

>> (ii) Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

---

[5] A few courts have refused to follow the Administration's new regulation because the treating physician rule arose out of case law applying generally applicable principles of administrative law, and is not something the Administration can rescind. *E.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, No. 20-461, 2020 WL 6581012, at *2 (W.D. Wash. Nov. 10, 2020). By contrast, the Tenth Circuit appears to have assumed (without discussion) that the new regulation is a valid interpretation of a statute consigned to the agency's interpretive discretion, and the treating physician rule is no longer in effect for applications filed on or after March 27, 2017. *Zhu v. Commissioner, SSA*, No. 20-3180, 2021 WL 2794533 (10th Cir. July 6, 2021). Because the claimant in this case concedes the new regulation governs his claim, Doc. 22 at 2, the Court does not reach this issue. In applying the new regulations, the Court does not rely on Tenth Circuit case law that applied previous regulations.

(iii) Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

(iv) Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

(v) Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

(4) Specialization. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5) Other factors. We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. § 404.1520c(c). The factors of supportability and consistency are the most important factors in determining the persuasiveness of a medical opinion. *Id.* § 404.1520c(b)(2). The ALJ must consider these two factors in his or her decision. *Id.* The ALJ may, but is not required to, explain how he or she considered the other remaining factors, unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record. *Id*. § 404.1520c(b)(2), (3).

The Tenth Circuit has yet to address the amended regulation in a published decision. A recent unpublished decision, however, provides some guidance on how the amended regulations apply when an ALJ chooses the opinions of state agency reviewers over those of treating

physicians. Specifically, in *Zhu v. Commissioner, SSA*, an ALJ evaluated two treating physician opinions and determined that they were "inconsistent with clinical findings showing that [the claimant] experienced few functional deficits, her testimony describing her daily activities and capabilities, and her post-chemotherapy statements showing improving symptoms." No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021). By contrast, the ALJ found that the state agency reviewers' opinions "were supported by detailed evidentiary narratives and were consistent with the medical record and [the claimant]'s testimony." *Id.* Although the Tenth Circuit did not discuss the effect of the amended regulations, it affirmed, holding that "[t]he ALJ complied with this regulatory framework and his evaluations of the pertinent medical opinions are supported by substantial evidence." *Id.* The Court agrees that the amended regulations do not alter the standard of review; ultimately, the relevant question is whether the agency's decision complies with the regulation and is supported by substantial evidence.

The Court further finds that the nature of substantial-evidence review has not changed in light of the new regulation. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). In addition, the ALJ should not ignore relevant evidence or mischaracterize the evidence. *Id.* at 1010 ("Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."); *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (ALJ erred by "ignor[ing] evidence from [a clinical nurse specialist] that would support a finding of

disability while highlighting evidence favorable to the finding of nondisability"); *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987) (reversing where, among other things, ALJ erred by mischaracterizing the evaluation of a treating physician). The decision below must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). As Judge Khalsa explained, these "requirement[s] enable[] the courts to engage in meaningful judicial review of agency decisions and thus exist[] independently of agency regulations." *Thompson v. Saul*, No. 20cv672 KK, 2021 WL 2711378, at *8 (D.N.M. July 1, 2021).

B.     Medical Opinions

In total, there are only four medical opinions in the file related to mental impairments. The ALJ rejected, at least in part, all four of them. Although the two medical opinions Mr. Torres argues the ALJ did not properly consider are most relevant to the Court's analysis, for completeness, the Court will summarize them all.

The Commissioner initially denied Mr. Torres's disability claim on October 13, 2017. AR 56. As part of the initial review, in October 2017, a state agency psychological consultant, Scott R. Walker, M.D., reviewed the record and concluded there was insufficient evidence of a severe mental impairment. AR 61. The ALJ concluded that "this finding is not persuasive." AR 20. The ALJ explained that "[i]t is not supported with an in-depth review of the complete medical record. The finding is not consistent with the claimant's diagnoses of anxiety and PTSD and related symptoms of an anxious mood, hypervigilance and feelings of guilt documented in the medical record." *Id.* (citations omitted). Mr. Torres does not challenge this finding.

Mr. Torres's treating physician, Dr. Nairn, opined in November 2017 that, in addition to chronic "disabling" pain, Mr. Torres has a "psychological impairment including generalized

anxiety disorder and OCD an [sic] additional to a significant stress surrounding the health of his

daughter." AR 568. Dr. Nairn indicated that "the combination of these factors would not be

expected to allow him to work in any capacity." *Id.* The ALJ did not evaluate this as a medical

opinion, and Mr. Torres does not claim that is error on appeal.[6]

In June 2018, Amy DeBernardi, Psy.D., performed a consultative evaluation. AR 584-87.

Mr. Torres presented as tearful and fearful and had an anxious mood and affect. AR 586. Dr.

DeBernardi found that Mr. Torres had a clear ability to reason and understand; intact remote and

recent memories; fair immediate memory; fair to poor sustained concentration and persistence;

few social outlets other than his wife; and fair to poor adaptive skills and ability to tolerate stress.

AR 587. Dr. DeBernardi concluded that Mr. Torres was "currently" presenting with severe

anxiety and that "would be very likely to impact his abilities to be a dependable employee, to

tolerate changes in the work environment, or to form appropriate relationships with co-workers,

supervisors, or the general public." *Id.*

The ALJ found that "[t]he opinion that the claimant has fair to poor concentration and

persistence and adaptive skills and that his anxiety would impact his ability to be a dependable

employee, tolerate changes, or form appropriate relationships is not persuasive." AR 23-24.

"This opinion is overly broad and does not provide enough specific information about work-

related functioning to be useful in evaluating his residual functional capacity." AR 24. "Further,

Dr. DeBernardi's assessments are not consistent with the claimant's conservative and routine

treatment history of medication management with no evidence of formal outpatient treatment,

inpatient treatment or a psychiatric hospitalization." *Id.* The ALJ found, however, that the

---

[6] The Court describes this as an opinion for purposes of setting out the background of Mr.
Torres's medical file, not to imply the ALJ committed error in failing to evaluate it.

remainder of the opinion is "persuasive as it is consistent with the claimant's relatively benign treating clinical examination findings that documented the claimant with an attentive manner, normal speech and intact orientation." *Id.* The ALJ found that "[t]he overall opinion is supported with Dr. DeBernardi's mental status examination findings that documented the clamant with an intact orientation, being tense and fearful, having an anxious mood and goal directed thought process, intact recent and remote memory and some concentration deficits." *Id.*

Finally, on June 26, 2018, state agency consultant Gary Lindsay, PhD, reviewed Mr. Torres's application at the reconsideration level. He assigned claimant "a mental RFC for semi-skilled work with limited interaction with the general public, due to MDI." AR 74. "Based on further development at reconsideration, the cl[aimant] has mild to moderate limitations in global functioning which will require accommodations note on the MRFC." AR 76. Dr. Lindsay concluded:

> Claimant can understand, retain, & perform simple and some complex tasks on a sustained basis. Has difficulty with interpersonal relations due to anxiety & would perform better in jobs with limited requirements to interact with co-workers. Would not interact well with the public. Claimant can work with normal supervision and in a setting where clmt. can work mostly alone. The clmt. can adjust to mental demands of the work place and carry out instructions.

AR 80. After considering Dr. Lindsay's opinion, the Disability Determination Services ("DDS") reviewer found Mr. Torres could adjust to other work and denied his disability application upon reconsideration. AR 81.

The ALJ found that Dr. Lindsay's "findings that the claimant can work in a setting where the claimant can work mostly alone is [sic] not persuasive." AR 23. "This severe limitation is not consistent with the claimant's routine and conservative treatment involving medication management with no evidence of any exacerbation of symptoms." *Id.* "The remainder of the findings are persuasive. The findings are consistent with the claimant's symptoms noted to be

stable on medication management and no evidence of any formal outpatient treatment, inpatient treatment or psychiatric hospitalizations. Additionally, the findings are consistent with the claimant's panic attacks noted to be stable while on medication." *Id.* (citations omitted). The ALJ concluded her discussion with this sentence that seems to contradict the previous paragraph of the analysis: "None of the findings are supported with a comprehensive review of the entire medical record." *Id.*

At step two, the ALJ found that Mr. Torres has the severe impairments of degenerative disk disease, posttraumatic stress disorder (PTSD), anxiety and hearing loss. AR 17. At step four, for the RFC, the ALJ found that Mr. Torres "can perform simple routine tasks but cannot perform fast paced production work; the claimant can tolerate occasional changes to the work setting and can occasionally interact with the general public, co-workers and supervisors." AR 19-20. At step five, the ALJ found the claimant could adjust to other work in the national economy. AR 25.

On appeal, Mr. Torres challenges the ALJ's evaluation of the opinions of Dr. DeBernardi and Dr. Lindsay. Doc. 19.

C.    Opinions of Dr. DeBernardi and Dr. Lindsay

With respect to the ALJ's treatment of Dr. DeBernardi's opinion, Mr. Torres first argues that the ALJ had a duty to develop the record on points that were unclear. Among his opinions, Dr. DeBernardi stated, "the claimant has fair to poor concentration and persistence and adaptive skills and that his anxiety would impact his ability to be a dependable employee, tolerate changes, or form appropriate relationships is not persuasive." AR 24. The ALJ found this portion of the opinion to be not useful, as "[t]his opinion is overly broad and does not provide enough specific information about work-related functioning to be useful in evaluating his residual functional capacity." AR 24. Mr. Torres argues that if the ALJ thought the opinion was unclear,

the ALJ should have recontacted Dr. DeBernardi to clarify the information she found to be overly broad and not specific enough. Doc. 19 at 10. The Court rejects the argument that the ALJ had a duty to develop the record.

The duty to develop the record exists where the record is insufficient to make a finding of disability. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) ("Here, there was no need to further develop the record because sufficient information existed for the ALJ to make her disability determination."). The Commissioner's regulations provide that evidence is "insufficient" when "it does not contain all the information we need to make our determination or decision." 20 C.F.R. § 404.1520b(b). The regulations also provide that a duty to develop the record may arise when the evidence is "inconsistent." Evidence is "inconsistent" when "it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. § 404.1520b(b). "If any of the evidence in your case record, including any medical opinion(s) and prior administrative medical findings, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have." *Id.* § 404.1520b(b)(1). If the evidence is insufficient or inconsistent, the Administration *may* recontact a medical source or send the claimant to another consultative examination. *Id.* § 404.1520b(b)(2).

In other words, the mere finding that a medical source's opinion is ambiguous, or insufficient to make a disability finding, does not trigger the ALJ's duty to recontact the medical source. That duty is discretionary, and the ALJ's primary job is to "consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have." Mr. Torres does not argue that the relevant evidence in the file was insufficient for making a

disability determination. *Cf.* Doc. 19 at 10. In reply, Mr. Torres observes that "the ALJ found that all opinion evidence addressing Mr. Torres' psychological impairments was only partially persuasive." Doc. 22 at 3. Although this is true, it remains the case that the ALJ had four medical opinions and some treatment evidence related to mental impairments. This is not a case in which no evidence existed to determine disability. However, later in this opinion, the Court takes up the issue of whether sufficient medical evidence existed in the file *after* the ALJ rejected all of the medical opinions in the file related to Mr. Torres's ability to interact with public.  For now, the Court rejects the narrow argument that the ALJ had a duty to recontact Dr. DeBernardi because the ALJ found part of the opinion ambiguous or unhelpful.

Mr. Torres also argues the ALJ contradicted herself by finding part of Dr. DeBernardi's opinion to be "not persuasive" but simultaneously finding that the "overall opinion" was supported by the examination findings. Doc. 19 at 10-12. Specifically, the ALJ found "not persuasive" Dr. DeBernardi's opinion that "claimant has fair to poor concentration and persistence and adaptive skills and that his anxiety would impact his ability to be a dependable employee, tolerate changes, or form appropriate relationships." AR 23-24. The ALJ presumably therefore accepted Dr. DeBernardi's opinion that "the claimant appears to have the clear ability to reason and understand; his remote and recent memories are generally intact; [and] his immediate memory is fair." AR 23.

The Commissioner argues that "[a]lthough the ALJ could have selected a better word than 'overall,' the Court can follow the ALJ's reasoning." Doc. 21 at 17. The Court agrees in part. The ALJ rejected Dr. DeBernardi's opinion that Mr. Torres had social limitations largely based on her observation that Mr. Torres has no history of being treated for this condition. AR 24. Thus, the ALJ essentially found that Mr. Torres' lack of treatment simultaneously indicates

that he does not have severe social limitations and does have the clear ability to reason, understand, and remember. Those findings are not in conflict with each other and both are consistent with what a lack of treatment tends to indicate.

However, the ALJ should characterize her own opinion accurately. If she rejects most of a doctor's opinion, she should not say that she accepts the "overall" opinion. To be precise, the ALJ rejected the following parts of the opinion: "claimant has fair to poor concentration and persistence and adaptive skills and that his anxiety would impact his ability to be a dependable employee, tolerate changes, or form appropriate relationships." AR 23-24. The ALJ presumably therefore accepted these sections of the opinion: "the claimant appears to have the clear ability to reason and understand; his remote and recent memories are generally intact; [and] his immediate memory is fair." AR 23. The Court agrees with Mr. Torres that, comparing what the ALJ rejected to what the ALJ accepted, the ALJ rejected the bulk of Dr. DeBernardi's opinion. The rejected sections of the opinion pertained to claimant's relevant work-related functioning; the accepted sections of the opinion are less relevant and make up only a minor portion of the examiner's opinion. The Court agrees that the ALJ should not have stated that the "overall opinion is supported" while in reality rejecting the "overall" opinion. The Court need not decide whether this is harmful error, however, because the Court ultimately finds substantial evidence does not support the ALJ's assessment of Mr. Torres's RFC.

Before honing in on the RFC, however, the Court first considers Mr. Torres's argument that the ALJ committed error when she discounted the opinions of doctors DeBernardi and Lindsay based on Mr. Torres's lack of treatment for the social limitations they assessed. Doc. 19 at 10-11 ("the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations and attempting to require treatment as a

precondition for disability would clearly undermine the use of consultative examinations."); AR 23 (explaining in discounting opinion of Dr. Lindsay that "[t]his severe limitation is not consistent with the claimant's routine and conservative treatment involving medication management with no evidence of any exacerbation of symptoms."). In support of his argument, Mr. Torres relies on the unpublished case of *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010), which held that an ALJ errs when relying on lack of treatment for a mental impairment to determine the impairment is not severe at step two. "[T]he regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of *treatment* received by a claimant does not play a role in that determination." *Id.* "[A]ttempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations." *Id.* As Mr. Torres points out, while this reasoning pertained to step two, the court also stated that "lack of treatment for an impairment does not necessarily mean that the impairment does not exist *or impose functional limitations.*" *Id.* (emphasis added). Therefore, Mr. Torres argues, the reasoning in *Grotendorst* should apply equally to issues arising at step four related to functional limitations.

The Court disagrees. *Grotendorst* was rooted in the Administration's own regulations governing step two. The regulations that govern step four are different and, as discussed above, have recently changed. Under the current applicable regulations, when considering medical source opinion, supportability and consistency are of paramount importance. And, when considering supportability and consistency, the ALJ must consider the entire record. If a claimant alleges a disability for which a person would normally seek treatment, but for which the claimant did not, this evidence is at least relevant (even though it may not be conclusive). In other words, lack of treatment is but one portion of the overall record to be considered and that could help

16

support or undermine a medical source's opinion. Thus, the Court agrees with the Commissioner's argument that Mr. Torres's lack of treatment history is fair game for evaluating whether a medical source opinion is consistent with the other evidence in the record. Doc. 21 at 16.

Here, however, Mr. Torres's lack of treatment history is inconsistent with, and stands alone against, the opinions of doctors DeBernardi and Lindsay. In this record, where all relevant medical opinion evidence points to a conclusion different than the one the ALJ reached, lack of treatment alone does not constitute substantial evidence needed to support the ALJ's conclusion.[7]

Dr. DeBernardi opined that Mr. Torres's severe anxiety would "very likely impact his abilities to . . . form appropriate relationships with co-workers, supervisors, or the general public." AR 587. In other words, Dr. DeBernardi, a consultative examiner who reviewed Mr. Torres's medical records and evaluated him in person, assessed this limitation despite Mr. Torres's lack of treatment history. This opinion is consistent with Dr. Nairn's opinion. AR 568 (Mr. Torres has a "psychological impairment including generalized anxiety disorder and OCD an additional [sic] to a significant stress surrounding the health of his daughter" and "the combination of these factors would not be expected to allow him to work in any capacity"). It is also consistent with part of Dr. Lindsay's opinion. AR 80. Dr. Lindsay opined claimant should have limited requirements to interact with co-workers; he is markedly limited in his ability to interact appropriately with the general public; and he should work in a setting where he is "mostly alone." AR 80. In considering whether substantial evidence exists to support the ALJ's decision, the uniform opinion of these three doctors (who all say Mr. Torres has limitations

---

[7] The ALJ entirely rejected the opinion of Scott R. Walker, M.D, as "unpersuasive" and neither party argues that the ALJ should have considered any part of Dr. Walker's opinion. Therefore, the Court entirely removes Dr. Walker's opinion from the equation.

greater than what the ALJ accounted for) dwarfs whatever inferences can be drawn from the fact

that Mr. Torres does not have a history of treatment related to his social limitations. In sum, the

Court agrees with the Commissioner that, when weighing factors bearing on consistency, the

ALJ appropriately placed lack of treatment on one side of the scale. But, the combined opinions

of doctors DeBernardi, Nairn, and Lindsay that must be placed on the other end of the scale

when it comes to deciding whether Mr. Torres can occasionally interact with the public weigh

much more heavily. Stated more succinctly, substantial evidence does not support the ALJ's

conclusion that Mr. Torres can occasionally interact with the general public.

Recognizing the possibility that the Court might reach such a conclusion, the

Commissioner argues that "the three occupations identified by the ALJ at step five that Plaintiff

could perform indicate he would have 'not significant' people contact." Doc. 21 at 18 (citing the

jobs of Addressor, Tube Operator, and Leaf Tier). Therefore, the Commissioner reasons, the

error, if any, is harmless. *Id*.

The Commissioner is correct that, according to the Dictionary of Occupational Titles, the

assigned jobs "require interaction with people only in the context of taking instruction and

involve insignificant or no interaction with the general public." *Shelton v. Colvin*, 663 F. App'x

690, 694-95 (10th Cir. 2016). In light of this DOT classification, *Shelton* found that the ALJ's

failure to incorporate "inability to work with the public" in the RFC was harmless. *Id.* at 685

("Given the lack of any actual conflict between the limitation Sheldon seeks of no interaction

with the general public, and the requirements of the jobs identified by the VE's testimony, any

error by the ALJ is harmless."). Here, the ALJ found that Mr. Torres can "occasionally" interact

with the general public. "Occasional" means "occurring from very little up to one-third of the

time." Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5-6. Therefore, the

Commissioner argues, any error related to the RFC for occasional interaction with the general public is harmless at step five.

The Commissioner's harmless error argument has appeal. At least some of the medical opinions in the record indicate that Mr. Torres could perform the type of work the ALJ found he could perform. The problem for the Commissioner, however, is that the ALJ threw out all of those medical opinions and so they cannot serve as the foundation for a more restrictive RFC the ALJ could have assessed. In other words, absent relevant medical opinions, the only tool left for the ALJ to use in determining the extent of Mr. Torres's social limitations is the absence of Mr. Torres's treatment records. It is not clear how those non-existent records could provide substantial evidence to support any determination about where Mr. Torres falls on the spectrum of social limitations.

It may be that, even accepting the more restrictive social limitations contained in the medical opinions, Mr. Torres could perform the jobs the ALJ identified. Had the ALJ simply discounted the severity of the limitations the doctors assessed Mr. Torres as having, a path to harmless error might have existed. Instead, however, the ALJ altogether rejected the opinions these doctors had about Mr. Torres's social limitations. And, in so doing, she left no medical foundation on which to base any assessment of Mr. Torres's social limitations.

The ALJ rejected the relevant portions of Dr. DeBernardi's opinion because they were "not consistent with the claimant's conservative and routine treatment history of medication management with no evidence of formal outpatient treatment, inpatient treatment or a psychiatric hospitalization." AR 24. For Dr. Lindsay, after the ALJ rejected the part of the opinion that Mr. Torres must work in a setting where he is "mostly alone," the ALJ found the "remainder" of Dr. Lindsay's opinion to be persuasive. AR 23; *see* Doc. 19 at 14. However, after this discussion of

which parts of Dr. Lindsay's opinion were more or less persuasive, the ALJ concluded the paragraph with a sentence stating: "None of the findings are supported with a comprehensive review of the entire medical record." AR 23. This resembles part of the language the ALJ used in totally rejecting the medical opinion of Dr. Walker (who found insufficient evidence of a severe mental impairment). AR 20 (ALJ explaining Dr. Walker's opinion "is not supported with an in-depth review of the complete medical record. The finding is not consistent with the claimant's diagnoses of anxiety and PTSD and related symptoms of an anxious mood, hypervigilance and feelings of guilt documented in the medical record" (citations omitted)). Thus, despite what the ALJ said in the preceding sentences, the most natural reading of the ALJ's conclusion that *none* of Dr. Lindsay's findings are supported is that the ALJ was rejecting the entirety of Dr. Lindsay's opinions.

The Commissioner does not argue with the plain meaning of the words the ALJ wrote. Instead, the Commissioner argues that the ALJ did not really mean what she wrote and so the Court should ignore those words. She characterizes the entire "none of the findings are supported" sentence as a scrivener's error. Doc. 21 at 20 ("This sentence appears to be a scrivener's error that has nothing to do with the ALJ's analysis of Dr. Lindsay's opinion. Notably, this sentence does not logically follow from the three preceding sentences, which articulated the ALJ's conclusions that the bulk [of] Dr. Lindsay's prior administrative medical findings were persuasive. Since the last sentence makes no sense, the Commissioner argues, the Court should decline to remand because the Court can otherwise follow the ALJ's reasoning with respect to Dr. Lindsay's prior administrative medical findings." (citation omitted)).

The Commissioner faces an uphill battle in characterizing as scrivener's error the entire concluding sentence the ALJ wrote as part of her discussion about the reliability of Dr. Lindsay's

opinion. After all, the issue is not whether one word the ALJ may have inadvertently added or omitted constitutes scrivener's error. Instead, the ALJ affirmatively wrote an entire sentence—a sentence similar to one the ALJ previously used to totally discount the opinion of a different doctor. It is much harder to characterize this act as inadvertent.

Nonetheless, the Commissioner's argument is plausible. The ALJ's final sentence does appear to conflict with the preceding sentences and so it is possible that the ALJ did not mean what she said in her final sentence. Other explanations for the inconsistency, however, are also plausible. Maybe it was the preceding sentences that amounted to scrivener's error. Or, maybe the ALJ did not really mean "none" of Dr. Lindsay's findings are supported. Maybe, instead, the ALJ meant to say only those findings she rejected are not supported. But, if some of Dr. Lindsay's findings are void for failure to comprehensively review the record, why would this failure to comprehensively review the record not infect all his findings?

If it were obvious that the ALJ did not mean what she said and, further, if what she really meant to say (even if it was nothing) was clear, the Court might accept the Commissioner's scrivener's error argument. But whether the ALJ intended to say something different, or nothing at all, where she wrote her final sentence, is all guesswork. The Court cannot simply cast aside such a significant sentence on the basis of guesswork. Instead, the Court presumes that the ALJ meant what she said: "None of [Dr. Lindsay's] findings are supported with a comprehensive review of the entire medical record."

Having rejected every medical opinion in the file, the ALJ was left with no substantial evidence to support the RFC for "occasional[] interact[ion] with the general public, co-workers and supervisors." AR 20. Again, the ALJ did not cite evidence supporting the social functioning limitations in the RFC; the ALJ relied on a *lack* of evidence (the lack of treatment history). *See*

AR 21 ("As for the claimant's mental impairments, there was a sparse treatment history involving being prescribed medication through his primary treating physician, with no formal psychological treatment. Furthermore, the claimant's clinical examination findings for his mental impairments was not representative of disabling mental functional limitations, as noted below. The medical record also did not support the severity of panic attacks alleged by the claimant."). Moreover, with the ALJ having rejected every medical opinion in the file, no foundation exists to support an alternative, more restrictive harmless error RFC that would still allow Mr. Torres to perform the occupations the ALJ identified in her decision. If, after having rejected the relevant opinions of the various doctors, the ALJ is left with an insufficient medical record on which to assess Mr. Torres's limitations, the ALJ has a duty to develop the record. Here, the ALJ did not develop the record and what remains of the pared-down medical record cannot provide substantial evidence in support of any assessed social limitation Mr. Torres might have.

Therefore, the Court remands this case for the ALJ to set forth the affirmative evidence that supports the social functioning limitations in the RFC. If that affirmative evidence is Dr. Lindsay's opinion, the ALJ must be clear about which portions of the opinion are persuasive and which ones are rejected as unsupported by a review of the entire medical record. Alternatively, if the ALJ finds the record lacks substantial evidence and is insufficient after evaluating the existing medical opinions on remand, the ALJ should develop the record before making a disability determination. The Court declines to reach Mr. Torres's remaining allegations of error, as they may be affected on remand.

## <u>CONCLUSION</u>

For the reasons stated above, Mr. Torres's Motion To Reverse And Remand For A

Rehearing With Supporting Memorandum, Doc. 19, is **GRANTED**.


**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**